EFFINGHAM MAYNARD & CO. v. E. E. OLSON, *as County Superintendent of Public Instruction of Riley County.*

COUNTY TEXT-BOOK BOARD — *Bond, not Duly Approved — Mandamus.* Where a county text-book board prescribes certain text-books to be used in the public schools of the county, and fixes the amount of the bonds to be given by the publishers of such books at the sum of $10,000, and also appoints a committee consisting of the president and secretary of the board and the county attorney to "draw up bonds," and the board does not fix any other or different amount, and does not give any other, further or different authority to the committee, and the board then adjourns *sine die*, and afterward such committee orally approves a bond given by the publishers of a portion of the books selected in the sum of $4,000, and such bond is not otherwise approved, *held,* that, as the bond was not accepted or approved in accordance with the statute, such publishers are not entitled to a peremptory writ of *mandamus* to compel the county superintendent of public instruction and *ex-officio* chairman of the text-book board to deliver to the school districts of the county lists of the text-books prescribed by such board.

*Original Proceeding in Mandamus.*

THE opinion herein, filed May 7, 1892, contains a sufficient statement of the case.

*Bradford & Huron,* for plaintiffs.
*Jno. E. Hessin,* for defendant.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of *mandamus,* brought originally in this court by Effingham Maynard & Co. against E. E. Olson, county superintendent of public instruction and *ex-officio* chairman of the text-book board of Riley county, to compel him to deliver to each school district in the county a list of the text-books alleged to have been selected and prescribed by the text-book board on August 28, 1891. Many questions have been presented by the briefs and in the oral argument of counsel, but with the view that we have taken of one of the questions, it will not be necessary to consider any of the others, as a decision of that one will be decisive of the whole case. Section 5 of chapter 171 of the Laws of 1885, (Gen. Stat. of 1889, ¶ 5868,) provides as follows:

"No text-book shall be prescribed in pursuance of the provisions of this act unless the publishers thereof shall have first filed with the county superintendent of public instruction a guarantee of its price, quality and permanence of supply for five years, together with a good and sufficient bond for the faithful compliance with said guarantee, conditioned in such sum as the county text-book board may determine and approve."

The minutes of the meeting of the text-book board of Riley county of August 28, 1891, with respect to the bond to be given by the book publishers, and its *amount* and *approval,* read as follows:

"On motion, the amount of bonds was fixed at $10,000.
"On motion, president, secretary and attorney were appointed to draw up bonds.
"Board adjourned.          J. W. LOWDERMILK, *Secy.*"

A bond was given by Effingham Maynard & Co. in the sum of $4,000, but it was never approved by the text-book board, nor by anyone else except the aforesaid committee, to

wit, the president of the board, the secretary, and the county attorney; and it was not approved by them until after the text-book board had adjourned *sine die*, and was not then approved in writing, but only orally. Mr. Lowdermilk, in his testimony with regard to this matter, testifies, among other things, as follows:

"Ques. I will ask you to state whether or not before that meeting adjourned it approved the bond executed by Effingham Maynard & Co., marked 'Exhibit C'? Ans. It did not.

.   .   .   .   .   .   .   .   .   .   .   .

"Q. The bond was fixed at $10,000; was that all there was to that motion? A. I presume it was. A motion was made to fix the bond at $10,000, and voted on and carried. I recollect in that manner.

"Q. Wasn't there something said about the bond being pro-rated? A. I think there was.

"Q. Then these minutes [showing witness 'Exhibit B'] nowhere show that fact. A. The minutes do not show what was said, but it shows the motion that was carried.

"Q. Wasn't it a part of that motion that the bond was to be pro-rated up among the various companies? A. I don't think it was. It was understood, but was not included in the motion.

"Q. Then the committee of which you were a member, consisting of the chairman, secretary, and county attorney, was to examine the bonds presented by these several persons to whom awards had been made, and approve them? A. We were appointed to examine the contracts and approve the bond.

"Q. Did you do that duty? A. We did.

"Q. This exhibit 'C' and 'E' is what you did with relation to the plaintiffs, Effingham Maynard & Co.? A. Yes, sir.

"Q. What did you do with them after you got through? A. I left them in the possession of the county superintendent.

"Q. You say this committee met; where did it meet? A. At the county superintendent's office.

"Q. When? A. After supper on that day.

"Q. After the board had adjourned? A. Yes, sir.

"Q. Who was present? A. The members of the committee, E. E. Olson, county attorney, and myself.

"Q. You said you made a contract; where is that contract? Is this paper marked 'Exhibit E' what you refer to when you say that you accepted the contract? A. Yes, sir.

"Q. The board, as a board, never approved your action, did they, in accepting this bond or this award? A. They did not.

"Q. You may state whether or not, this meeting by any action had at that time, $4,000 was designated as the bond which Effingham Maynard & Co. should give to the county. A. It was not.

"Q. These papers were put together by your committee on that occasion and handed over or left with the county superintendent as they are now? A. They were.

"Q. I will ask you if you were instructed by the text-book board to examine these bonds of the several persons to whom awards had been made and then report your action back to the board? A. We were not.

"Q. Then you were appointed by the text-book board to examine and approve of the contracts and bonds? A. As I understand the matter, the fixing of the bonds and contracts was left with this committee.

"Q. Left wholly with the committee? A. Yes, sir.

"Q. What you did with reference to that matter was done in compliance with the instructions you received from the board? A. It was."

The testimony of Mr. Olson, the chairman of the board and the chairman of the committee, was substantially the same as that of Mr. Lowdermilk. Mr. Kimble, the county attorney, and a member of the committee, did not testify in the case.

The attorney for the defendant, in his brief in this court, claims that no sufficient bond under the statute was ever given. His language is as follows:

"The act providing for a uniform series of text-books (§ 5) prescribes that no text-books shall be prescribed in pursuance of the provisions of this act unless the publisher thereof shall first file with the county superintendent of public instruction a guarantee of its price and quality, and permanence of supply for five years, together with a good and sufficient bond for the faithful compliance with said guarantee, conditioned in such sum as the county text book board shall *determine* and *approve*. Now this is the allegation in the petition of the relator, 'that they executed a good and sufficient bond in the manner pre-

scribed by law, and that said bond was conditioned that the said plaintiffs would furnish the books in accordance with the said guarantee and proposition.' Now it is absolute that this statute makes the execution of the bond and guarantee a prerequisite to the award; that no award shall be made until after the bond and guarantee are filed with the text-book board, and not only that but until after its approval, and the amount shall be fixed and the bond approved by the text-book board.

"Now, assuming that this was a *de facto* board, all the acts which it undertook to perform, so far as this bond is concerned, were absolutely void under the statute. The evidence shows that a committee was appointed to accept this bond and approve it, and that no definite amount was fixed except $10,-000; that the board adjourned *sine die*, and that after this adjournment this committee, composed of two members of the board and the county attorney, who was not a member of the board and who had no business there so far as we can learn from the statute, made and fixed the amount of the bond at $4,000, but failed to approve it, so far as the bond itself shows, which is attached to the deposition of the defendant. The evidence shows at least inferentially that this committee undertook to approve this bond, but the board had adjourned, and was *functus officio*, and that afterwards this bond in its present condition was returned to the county superintendent of public instruction. No action of the board was ever taken approving the bond. Now then, the relators themselves have failed to comply with the plain requirements of the statute, and being in default, have no obligation resting upon them, and cannot now ask the order of this court to issue to compel compliance with the conditions of their award. The text-book board had no authority to delegate this power to a committee, not even of its own members. Whatever power or authority this text-book board had, had been conferred by the act itself, and they could take nothing by implication. This writ never issues in doubtful cases. (High, Extraord. Legal Rem., § 9.) And to warrant the court in granting the writ all the facts must appear so clear that his right to the same cannot be doubted, and it will not be granted to compel the performance of an official act where substantial doubt exists as to the duty of the officer to perform it." (*Ex parte Barnwell*, 8 Rich. N. S. 264.)

No reply to this portion of the defendant's brief has been

made by counsel for the plaintiff. The statute (said § 5) evidently means that no text-book shall be prescribed or awarded until after the proper bond has been given. Of course the board might indicate what books it would prescribe, and then, while the board is still in session or before it finally adjourns, a proper bond to the satisfaction of the board could be given, and then the award would be made or become final. This was not done in the present case. The minutes of the meeting show that the board fixed the amount of the bonds at $10,000, and no other amount was mentioned; and then the board appointed a committee, consisting of the president, secretary, and attorney, to draw up the bonds; but the board, according to the minutes, did not give authority to such committee to fix the amount of any bond, or to change the amount, or to pro-rate between bonds, or to approve any bond or the amount thereof, or the security thereon. In fact, according to the minutes, no power was given to this committee except to "draw up bonds." The bond in all cases should be drawn up and presented to the board while it is in session or before it finally adjourns; but in this case it was not. The question whether the board could delegate its power to a committee is not fairly presented in this case, and we shall not decide it. Under the evidence in the present case, we cannot say that the plaintiff company complied with the statutes in executing the required bond, and therefore we cannot say that it is entitled to a peremptory writ of *mandamus* to compel the county superintendent to perform an act which he is not required to perform unless such a bond has in fact been given.

The peremptory writ of *mandamus* will be denied.

All the Justices concurring.